## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL GEEO, on his own behalf and on behalf of those similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **Case No. 3:22-cv-00359** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **BONDED FILTER CO., LLC, d/b/a BFC Solutions,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion for Reconsideration (Doc. No. 33) filed by defendant Bonded Filter Co., LLC, d/b/a BFC Solutions ("BFC"), asking the court to reconsider its Order (Doc. No. 31) granting plaintiff Daniel Geeo's post-judgment Motion to Alter or Amend Judgment and for Leave to Amend Complaint ("Rule 59 motion") (Doc. No. 30). For the reasons set forth herein, the defendant's motion will be granted in part and denied in part.

## I.  FACTUAL PROCEDURAL HISTORY

Plaintiff Daniel Geeo, on behalf of himself and others similarly situated, filed the original Complaint in this action, asserting claims against BFC for alleged violations of the Fair Labor Standards Act ("FLSA") on May 17, 2022. (Doc. No. 1.) After BFC filed a Rule 12(b)(6) Motion to Dismiss based on failure to state a claim, Geeo filed his first Amended Complaint ("FAC") on July 5, 2022, attempting to cure any pleading deficiencies. The court denied as moot the first Motion to Dismiss. The court, however, granted BFC's subsequent Motion to Dismiss the FAC and denied Geeo's request for leave to amend, as it was embedded in his Response to the Motion

to Dismiss and was not accompanied by a proposed amended pleading. At the same time, however, the court noted that the denial was without prejudice to the plaintiff's ability to file a timely motion requesting both that the court alter or amend the judgment and grant leave to amend the pleading, accompanied by the proposed amended pleading. (Doc. No. 28; *see also* Doc. No. 27, at 9.)

The plaintiff filed his Rule 59 motion within 28 days of entry of judgment, arguing—but without actually articulating the Rule 59 standard—that the court had committed a clear error of law in dismissing the FAC and, alternatively, that the court should set aside the judgment and allow him to amend again to prevent manifest injustice. (*See* Doc. No. 30, at 4 (asserting that relief was warranted because "(1) Plaintiff's Complaint was properly plead[ed] and (2) to the extent this Court disagrees that Plaintiff's Complaint was properly plead[ed], justice demands leave for Plaintiff to file a Second Amended Complaint and for his claim to be decided on the merits.").) The court granted the motion and reopened the case the same day—without giving the defendant time to oppose the motion.

BFC thereafter filed its Motion for Reconsideration and supporting Memorandum (Doc. Nos. 33, 34) under Local Rule 7.01(b), which expressly provides for a motion to reconsider in this circumstance to function as a response in opposition to a motion granted before the expiration of the time for the opposing party to file such a response. *Accord Hanson v. McBride*, 337 F.R.D. 139, 145 (M.D. Tenn. 2020) (Trauger, J.) ("The very purpose of a motion to reconsider under L.R. 7.01(b), . . . is to serve as the equivalent of such a response when none could have been filed."). Pursuant to the court's directive, the plaintiff filed his Response (Doc. No. 37) to the Motion for Reconsideration, and the defendant, with the court's permission, filed a Reply (Doc. No. 38). Under L.R. 7.01(b), and despite the formal titles and configuration of the various filings, the court

will consider *de novo* the plaintiff's Rule 59 motion and construe the defendant's Motion to Reconsider as a response in opposition to that motion.

## II.    STANDARD OF REVIEW

Although the plaintiff's Rule 59 motion, on its face, seeks relief under Rule 59 or, alternatively, under Rule 60, the motion was filed within Rule 59(e)'s twenty-eight-day timeframe, and it does not actually invoke any of the grounds for relief made available by Rule 60. The court, therefore, construes the motion as a timely Rule 59(e) motion. In addition, the plaintiff expressly invokes Rule 15(a).

Typically, "[u]nder Rule 15, a court may grant permission to amend a complaint 'when justice so requires' and in the normal course will 'freely' do so." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting Fed. R. Civ. P. 15(a)). However, the various factors may affect a Rule 15(a) determination, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citation omitted). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).

In addition, "when a Rule 15 motion comes after a judgment against the plaintiff, . . . [c]ourts . . . must 'consider[] the competing interest of protecting the finality of judgments and the expeditious termination of litigation.'" *Id.* at 615–16 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). In post-judgment motions to amend, as a result, "the Rule 15 and Rule 59 inquiries turn on the same factors." *Morse*, 290 F.3d at 799. Generally, "[a] Rule 59 motion should

only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) (citing *Leisure Caviar*, 616 F.3d at 615).

The court has broad discretion to grant or deny a motion to amend. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009). In this context, "abuse of discretion may occur when a district court does not state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent," *Morse*, 290 F.3d at 800.

## III.    DISCUSSION

The SAC does two things. First, it adds allegations that clarify and support the plaintiff's claim in the FAC that the defendant has a policy of failing to fully compensate the plaintiff and others similarly situated—all employed as HVAC technicians—for time spent commuting to their first job site *after* attending a mandatory pre-shift meeting. Second, it adds entirely new factual allegations about the defendant's "company-wide policy of failing to pay its technicians . . . for pre-trip vehicle inspections." (SAC ¶ 28.) More specifically, the plaintiff alleges that (1) technicians such as the plaintiff are required to perform a mandatory pre-trip vehicle inspection before the mandatory meeting, which includes, among other things, "checking tire pressure, lights, windshield wipers, tire tread, etc." and takes approximately fifteen minutes; (2) technicians have to log the results of their inspection into a company app in order to clock in for the day; (3) once per week, they must take photographs of the interior and exterior of their vehicles and upload those to the company's app, which adds on an additional fifteen minutes to the inspection. (Doc. No. 32 ¶¶ 29–35.)

The defendant argues strenuously that the plaintiff has failed to satisfy the requirements of Rule 59(e), on the basis that the plaintiff does not show or even argue that a single one of the Rule 59(e) criteria is met here and, alternatively, that the amendment is futile, because the SAC still fails to state a colorable claim under the FLSA. (*See generally* Doc. No. 34.) In his Response (effectively a reply brief), the plaintiff disputes the defendant's contention that he did not adequately establish a basis for altering or amending the judgment under Rule 59(e) and posits that the procedural posture of this case is different from that of the cases on which the defendant relies. He argues that the court has broad discretion in deciding whether to grant a Rule 59(e) motion and, further, that the defendant is simply incorrect in arguing that the amendment is futile.

The defendant points to a number of Sixth Circuit cases affirming, as within the district courts' discretion, decisions denying motions to alter or amend, including *Leisure Caviar*, *Michigan Flyer*, and *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014). Several of those cases took pains to distinguish the circumstances before them from those in *Morse*, where the Sixth Circuit vacated the district court's denial of the plaintiff's motion to alter or amend the judgment and denial of leave to amend the pleading as an abuse of discretion. For instance, in *Michigan Flyer*, the court found *Morse* distinguishable on the grounds that (1) "the *Morse* plaintiffs requested leave to amend prior to the dismissal of the action," thereby putting the defendants on notice, before judgment was entered, that the plaintiffs would seek leave to amend; (2) "the dismissal in *Morse* concerned factual allegations rather than legal issues"; and (3) the proposed amendments in *Morse* did not "'add new substantive claims or overhaul plaintiffs' theory of the case, but merely attempt[ed] to remedy the defects identified by the magistrate.'" *Mich. Flyer*, 860 F.3d at 432–33 (quoting *Morse*, 290 F.3d at 801).

The court finds this case to be closer to *Morse* than to those cases in which denial of post-judgment leave to amend was affirmed. As in *Morse*, the plaintiff here requested leave to amend prior to dismissal of the action, and the court, in granting the defendant's Motion to Dismiss the FAC, specified that the dismissal was without prejudice to the plaintiff's ability to seek leave to alter or amend the judgment and to file an amended complaint, thus putting the defendant on notice that the dismissal was not necessarily final. Further, also as in *Morse*, at least as it pertains to the compensability of commute time, the dismissal "concerned factual allegations rather than legal issues," and the FAC—as related to this claim at least—"merely attempt[ed] to remedy the defects identified by the [court]." *Morse*, 290 F.3d at 801. Finally, with respect to the commute claim, the case does not involve undue delay in seeking to amend or prejudice to the defendant arising from the amendment. The court's delay in addressing the defendant's Motion for Reconsideration cannot be attributed to either party, and the FAC generally placed (or should have placed) the defendant on notice as to the substance of the plaintiff's claim.

Moreover, the court finds that the original dismissal of the FAC was in error, as the court failed to acknowledge the allegation that the defendant has a policy of not compensating technicians for "commute/drive time that occurred during or after the mandatory meetings" that, according to the plaintiff, constitute part of the employees' "principal activity." (Doc. No. 19 ¶ 32.) Insofar as that allegation was somewhat vague about both the mandatory meeting and when exactly the commute time occurred, the plaintiff has now clarified in the SAC that the defendant requires the plaintiff to attend "a <u>mandatory</u> meeting" at the beginning of each workday, at a designated meeting place, to cover various topics, including the "assignments and route for the day" and required safety measures. (Doc. No. 32 ¶ 36.) The plaintiff and other employees then travel from the mandatory meeting to their first job site of the day. (*Id.* ¶ 37.) The plaintiff asserts as a matter

of law that the travel time from the meeting to the first work site is compensable and, as a factual matter, that the defendant does not compensate him and other similarly situated employees for that time. (*Id.* ¶¶ 38–39.)

The plaintiff is also correct that commuting from one work site to another *after* commencement of the workday is generally compensable under the FLSA, such that this claim, and the plaintiff's clarification thereof, is not futile. *See* 29 C.F.R. 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice."); *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014) ("[T]he Portal-to-Portal Act[, which amended the FLSA in 1947,] did not alter what is known as the 'continuous workday rule,' under which compensable time comprises 'the period between the commencement and completion on the same workday of an employee's principal activity or activities . . . [,] whether or not the employee engages in work throughout all of that period." (quoting 12 Fed. Reg. 7658 (1947))). Accordingly, the court finds that denying the plaintiff the opportunity to amend the pleading to incorporate these allegations would cause manifest injustice.

The court does not reach the same conclusion regarding the plaintiff's new allegations and new FLSA claim based on the defendant's failure to compensate him and other similarly situated technicians for time spent performing a safety inspection on their vehicles prior to attending the mandatory meeting that otherwise began their workday. Under the Portal-to-Portal Act, "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is non-compensable activity. 29 U.S.C. § 254(a)(1). Likewise, employees are not entitled to compensation under the Act for "activities which are

preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity." 29 U.S.C. § 254(a)(2). Under these provisions, "ordinary commute time [is] non-compensable under the FLSA." *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999). In addition, as relevant here, "[k]eeping vehicles clean and scheduling maintenance . . . are hardly arduous and precisely the sort of activities that Congress had in mind when it used the phrase 'incidental to the use of [the employer's] vehicle.'" *Id.* at 759. In *Aiken*, the Sixth Circuit held that "routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable," *id.* (citing H.R. Rep. 104–585).

In *Luster v. AWP, INC.*, No. 1:16CV2613, 2020 WL 6119418 (N.D. Ohio Oct. 16, 2020), the district court granted a Rule 12(b)(6) motion to dismiss an FLSA claim based on the plaintiffs' assertion that they were entitlement to compensation for, among other things, spending 15 to 20 minutes daily performing "pre-trip inspections" on the plaintiffs' employer-issued vehicles and an additional 15 to 20 minutes per day completing post-trip inspections. *Id.* at *1. Like the plaintiffs in this case, the *Luster* plaintiffs alleged that they were required by the employer to perform pre-trip inspections—encompassing such things as checking tire pressure, oil and other fluid levels and ensuring that lights, turn signals, engines, windshield wipers "and the like" were operating correctly. *Id.* The plaintiffs were required to prepare and submit inspection reports to confirm that they had performed the inspections. The function of the inspections was purportedly to "prevent accidents and promote[] a safe and efficient working environment." *Id.* The plaintiffs asserted that the pre-trip inspection was compensable, because it was "required by and performed for the benefit of" the defendant, constituted part of the plaintiffs' "principal activities," and/or was an "integral

and indisputable" part of their principle activities. Based on *Aiken*, the court held that the plaintiffs' routine "maintenance and inspection tasks are not compensable" work under the FLSA, because they were simply "preliminary" to their principal activity or activities. *Id.* at \*5.

The plaintiff here, in an attempt to avoid the conclusion that his FLSA claim based on the defendant's failure to compensate technicians for time spent performing pre-trip inspections is futile, asserts that the Sixth Circuit has not actually resolved the question of whether pre-trip inspections of the type at issue in this case are compensable under the FLSA and that other courts have determined that they are. (*See* Doc. No. 37, at 14.) The cases the plaintiff relies on, however, all involved claimants employed as truckers or drivers. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47 (8th Cir. 1984); *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721 (5th Cir. 1961); *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2009 WL 3561301 (D. Kan. Oct. 30, 2009).

In *Mitchell*, for example, the court rejected the defendant trucking company's arguments that the plaintiffs' pre-trip safety inspections were not compensable under the Portal-to-Portal Act, stating

> The work which these men did was to drive trucks. That was their sole, only and principal activity. The trucks, to be sure, were to haul particular kinds of things, but they could not do so unless the truck was driven. For the truck to be operated, it first had to be (a) serviced, then (b) driven from the truck yard to the material plant, (c) placed under a load and loaded, deliver its lead and (e) return to the truck yard for clean up and (f) refueling at night These activities were certainly such an integral part and so indispensable to the employees' main job as to be outside of the Portal-to-Portal exemption.

Mitchell, 286 F.2d at 725. In other words, it was relevant—and undisputed—in that case, that the plaintiffs' job was to drive, making the maintenance of their trucks an integral and indispensable part of their job.

Likewise in *Barrentine*, which cites and relies upon *Mitchell*, the Eighth Circuit rejected the defendant's argument that, because pre-trip inspections were not "controlled or required by the employer" and were "primarily for the benefit of the driver and not of the employer and his business," the time spent performing them was not compensable. *Barrentine*, 750 F.2d at 50 (internal quotation marks omitted). As the court stated there:

> The fact that a pre-trip safety inspection is required by federal regulations does not remove the employer's control over and responsibility for this inspection. And, although the individual driver of the vehicle will, of course, benefit from the safety inspection and repair of defects, appellant and the trucking industry as a whole, not to mention the motoring public, are certainly beneficiaries of the inspection procedure.

*Id.*

The plaintiff in the case at bar, however, was employed as a technician to service and maintain commercial HVAC equipment. (Doc. No. 32 ¶ 22.) There is no suggestion that driving *per se* fell among his principal activities or that maintaining (or inspecting) his vehicle, regardless of whether the employer required it, was "an integral and indispensable part of [his] principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014) (internal quotation marks omitted). The court is persuaded by the reasoning in *Luster* that *Aiken* applies here and that the pre-trip inspections and reports are merely preliminary to the plaintiff's principal job activities and, therefore, not compensable under the FLSA. The amendments to the SAC that incorporate this claim are futile, insofar as they seek to advance a claim for unpaid compensation or overtime based on the pre-trip vehicle inspections.

## IV.    CONCLUSION

As set forth herein, the court considers the defendant's Motion for Reconsideration (Doc. No. 33) as a response in opposition to the plaintiff's post-judgment Motion to Alter or Amend Judgment and for Leave to Amend Complaint (Doc. No. 30). The defendant's arguments are

meritorious, insofar as the defendant attacks as futile the plaintiff's new FLSA claim based on the defendant's alleged failure to compensate him and other similarly situated HVAC technicians for the time spent performing pre-trip vehicle inspections. Otherwise, however, the plaintiff will be permitted to pursue his FLSA claim based on the defendant's failure to compensate him and other similarly situated technicians for time spent commuting to their first job site *after* attending a mandatory meeting. With regard to that claim, the court will reaffirm its grant of the plaintiff's Motion to Amend Complaint and deny the Motion for Reconsideration.

An Order consistent with the foregoing is filed herewith.

ALETA A. TRAUGER
United States District Judge